## Clift *v.* Philadelphia, Appellant.

*Constitutional law—Courts—Stenographers—Payment of stenographer—Act of May* 1, 1907, *P. L.* 135.

The portion of the Act of May 1, 1907, P. L. 135, which authorizes the placing upon the county of the burden of paying for typewritten copies of the stenographic reports of trials furnished to the plaintiff and defendant, or their respective counsel, in litigation between private parties in which the public has no direct interest, is not unconstitutional; but no such copies can be furnished, except in pursuance of a special order of the court in each case, unless the case has been appealed to the Supreme or Superior Court. A general order of court directing copies of the notes to be furnished to the plaintiff and defendant in all private cases is invalid, inasmuch as the court cannot divest itself of the discretion which it must exercise in each particular case.

Argued Oct. 14, 1909. Appeal, No. 152, Oct. T., 1909, by defendant, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1908, No. 4,826, for plaintiff on case stated in suit of William M. Clift v. Philadelphia. Before Rice, P. J., Henderson, Morrison, Orlady, Head, Beaver and Porter, JJ. Reversed.

Case stated to determine liability of county for cost of stenographic notes of a trial. Before Carr, J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in entering judgment for plaintiff in the sum of $420.40.

*Andrew Wright Crawford,* assistant city solicitor, with him *J. Howard Gendell,* city solicitor, for appellant.—Money derived from taxation may be used only for public purposes. The power to tax is subject to the limitation that a tax must be laid for a public purpose only, and an imposition in the form of a tax for purposes of private interest is void and unconstitutional: Grim v. Weissenberg School Dist., 57 Pa. 433; Sharpless v. Mayor, 21 Pa. 147; Lehigh County v. Meyer, 102 Pa. 479.

If an attempt has been made in this act to put upon the county the fees of the attorneys for the plaintiff and defendant in private litigation, it needs no argument to show that such an attempt would have been unconstitutional: Briggs v. Erie County, 98 Pa. 570.

Personal claims even though arising from an attempt of a public servant to serve the public may not be paid out of the public funds: Faas v. Warner, 96 Pa. 215; Strock v. Cumberland County, 176 Pa. 59.

*Henry C. Boyer*, for appellee.—The act was constitutional: Russ v. Com., 210 Pa. 544; Speer v. School Directors, 50 Pa. 150; Com. v. Moir, 199 Pa. 534; Knisely v. Cotterel, 196 Pa. 614; City of Erie v. Reed, 113 Pa. 468.

OPINION BY PORTER, J., March 3, 1910:

The plaintiff brought this action of assumpsit to recover the sum of $730 alleged to be due him for services rendered as official stenographer of the court of common pleas No. 2, of Philadelphia county, for copies of his stenographic notes, in a large number of trials, furnished to counsel, and for nine copies of his stenographic notes furnished to as many defendants in a certain trial in the court of quarter sessions of said county, asserting his right to recover of the defendant under the provisions of the Act of May 1, 1907, P. L. 135. The parties agreed upon the facts in a case stated, which divided the cases in which the plaintiff asserted the right to recover for copies of the proceedings furnished into three classes: (1) Civil proceedings between private parties tried in the court of common pleas, after the court had, on December 11, 1907, adopted and promulgated the following general order or rule, viz.: "Unless otherwise ordered by the trial judge, the official stenographer shall furnish one typewritten copy of his notes of the proceedings at each trial to the plaintiff or plaintiffs therein, and one copy thereof to the defendant or defendants therein, not more than two copies in all of the notes taken at any trial to be supplied to the parties, regardless of the number concerned;" and before the rule recited had, on March 6, 1908, been rescinded

and repealed. During the time this rule was asserted to be in force the plaintiff furnished under its supposed provisions to the plaintiffs and defendants in a large number of cases involving private litigation copies of his stenographic notes which at the rate of compensation fixed by the statute upon which he relies would entitle him to receive $294.50; (2) Civil cases involving mere private litigation in which, after abrogation of the above rule, the court at the trial of the respective cases made a special order directing the official stenographer to furnish typewritten copies of his stenographic notes to the plaintiffs and defendants in said cases; the aggregate amount claimed in cases of this character being $87.20; and (3) a certain case tried in the court of quarter sessions, in which there were nine defendants, and the court made an order directing the official stenographer to "supply one typewritten copy of his stenographic notes to the court, one copy to the district attorney, and one copy to each defendant represented by separate counsel." The plaintiff under this order furnished one copy to the court and one copy to the district attorney, for which he has been paid, by the defendant. He furnished a typewritten copy of the notes to each one of the defendants on trial, and for said nine copies he asserts the right to be compensated by the defendant in the sum of $348.30. The learned judge of the court below, in an opinion filed, held that the plaintiff under the facts agreed upon was entitled to recover the full amount claimed for services rendered in the first and second classes of cases above stated, but, as to the case tried in the court of quarter sessions, held that, the plaintiff having already been paid for the copies furnished to the court and the district attorney, respectively, could only under the statute recover for one copy furnished to the defendants, amounting to $38.70, and accordingly entered judgment in favor of the plaintiff, in the sum of $420.40, with interest. The defendant appeals from that judgment.

The learned counsel for the defendant contend that so much of the Act of May 1, 1907, P. L. 135, as authorizes the placing upon the county of the burden of paying for typewritten copies of the stenographic reports of trials furnished to the plaintiff

and defendant, or their respective counsel, in litigation between private parties, in which the public has no direct interest, is unconstitutional; that it is a taking, by taxation, of private property and devoting the proceeds of the tax to a private use. The argument is that it is the taking of the money realized from the taxation of the property of A for the purpose of purchasing and giving to B and C something in which A has no interest. The power of taxation is a necessary and indispensable incident of government. "Yet an act of the legislature authorizing contributions to be levied for a mere private purpose, or for a purpose which, though it be public, is one in which the people from whom they are to be exacted have no interest, would not be a law, but a judicial sentence, and not within the legitimate scope of legislative authority:" Grim v. Weissenberg School District, 57 Pa. 433; Sharpless v. The Mayor of Philadelphia, 21 Pa. 147. The power to tax is subject to the limitation that a tax must be laid for a public purpose only, and an imposition in the form of a tax for purposes of private interest is void and unconstitutional. This limitation upon the power to tax necessarily gives rise to the corollary: that money derived from taxation must be used only for public purposes. It is not within the power of the legislature to direct the application of public money to a purpose in support of which it is without authority to impose a tax: Faas v. Warner, 96 Pa. 215. Within this limit the power of the legislature to impose taxes, or to authorize their imposition by a subordinate municipal authority, is of necessity discretionary. The courts are without power to question the wisdom, policy or even quality of the legislation, if its provisions are within the limits of the legislative discretion. A tax law is to be considered valid, unless it be for a purpose in which the community taxed has palpably no interest; and when it is apparent that the burden is imposed for the benefit of others than the public and for another than the public interest: Speer v. School Directors of Blairsville, 50 Pa. 150; Russ v. Com., 210 Pa. 544, and cases above cited. Is the expenditure of public money authorized by the act of 1907 for a public purpose, and may it subserve an end advantageous to

the community from the taxation of which the fund is derived?

The statute has general reference to public judicial proceedings and the rights of the parties engaged therein. The general subject is, therefore, one in which the public have an interest, with regard to which legislative action, in the interest of the public, is absolutely necessary. The public generally, as well as every individual citizen of the commonwealth, have an interest in the prompt, efficient and certain administration of justice. There was a time when the volume of litigation was much less than at present and the system of judicial procedure then prevalent was sufficient to meet the requirements of public justice and dispose with reasonable promptness of legal controversies between the citizens of the commonwealth. All offers of testimony, exceptions thereto, the rulings of the court thereupon, and the testimony admitted under the bill of exceptions were written out at length. This process consumed time, it was slow; but the parties knew as the trial proceeded just what would appear in the record when finally made up. The increase in the volume of business made necessary the introduction of a new system, and the use of stenographers to report judicial proceedings has become general. This device expedites judicial procedure, economizes the time of the public tribunals, and so promotes the prompt administration of justice and reduces the amount of public moneys in that behalf expended. The record as now made up, however, is not primarily within the reach of the parties, it is written in symbols which they cannot comprehend. They cannot be absolutely certain as to what it will show until it has been transcribed in longhand, and when that has been done it may not show what they think it ought to reveal. If the parties obtain from day to day, during the progress of a long trial, typewritten copies of the stenographic notes of the proceedings, they are thus made aware of how the record is being made up, while it is being made up. If the reporter has made a mistake the attention of the court can be directed to it, at the time, and it can then be corrected; if anything has been omitted, the omission can be supplied. We cannot, therefore, say that

it is unreasonable to assume that not only the promptness but the accuracy of public judicial proceedings may be promoted and the rights of parties safeguarded by their obtaining copies of the record, during the progress of the trial. True it is, that parties who are litigating as to their private rights and who are possessed of means should themselves pay for the advantage to be derived from having such copies of the notes of the proceedings; and this act manifestly does not contemplate that the public moneys should be paid out for copies · furnished to parties of that character. But cases may arise in which it will become evident to the court that a party who does not have the means to procure copies of the proceedings, as the trial is in progress, is placed at a serious disadvantage. It may be said that the public has no interest to be subserved which would justify the expenditure of money raised by taxation for the purpose of protecting the individual rights of the parties to litigation. The reply to this would seem to be that the subject with which this statute deals is one in which every . citizen of the community has an interest. The only thing involved in a given case may be the life, liberty or property of an individual, but the government assumes the exclusive power, through its constituted tribunals, to pass upon the questions which must determine the issue. The sovereign power has made laws which ordain that a citizen for certain offenses shall forfeit his life or liberty and that, under certain conditions his property shall pass to others, and has constituted courts for the purpose of determining the existence of the facts and conditions and adjudging the consequences. It is, therefore, to the interest of all the people that every proper safeguard should be provided to guard against mistakes in the , administration of justice.

We are not required, in this case, to determine whether a law which provided that copies of the proceedings in all cases should be furnished at the public expense to private litigants would be valid. This statute does not require anything of that kind, nor do its provisions authorize the courts to so direct by any general order. The third section of the act requires official stenographers, "when engaged in such courts" to take full

stenographic notes of the testimony in all judicial proceedings in any trial of fact, at law or in equity, etc. The fourth section requires him to make, "from his stenographic notes of any trial or other matter of which a copy may be required, a correct, typewritten copy or copies as hereinafter provided." The provisions relating to the making of typewritten copies of the stenographic notes are as follows: "Section 7. During the progress of the trial of any cause, upon the order of the court upon its own motion, or upon motion of counsel and allowance by the court, the official stenographer reporting the proceeding shall, from the stenographic notes thereof, make three typewritten copies, and from day to day as the case progresses supply one copy to the court, one copy to the plaintiff, and one copy to the defendant, or their respective counsel: and within a reasonable time after the completion of the trial to certify a complete copy, as hereinbefore provided, and supply to the parties or their counsel any portion of such copies, not previously supplied, as may be necessary to complete the record." This section contains further provisions authorizing the court to make an order after the trial, when none had previously been made, directing the furnishing of a typewritten copy or copies of the stenographic notes, and requiring the stenographer to furnish such copies, also, upon the request of counsel. The section closes with the direction that for the copy or copies ordered by the court compensation shall be made as provided in sec. 8 of the act, and, if ordered by counsel, without an order of the court, then the compensation therefor shall be made by the party ordering the same. The eighth section of the statute fixes the rate at which the official stenographer shall be paid for typewritten copies and directs that payment shall be made by the county in which the case is pending, or for which the work is done, when ordered by the presiding judge. The only instances in which the making of a typewritten copy of the stenographic notes to be paid for by the county, without the order of the court, is by this statute required, are when an appeal has been taken to the Supreme or Superior Court, or in cases of conviction of murder in the first degree; in which cases it is made the duty of the official stenog-

rapher to certify and file of record a typewritten copy of the notes of trial, "without any order of the court; payment for which shall be made in the same manner as if directed by the court." As to these particular cases the statute only requires that the record shall be made up at the public expense. The statute does not itself require copies of the notes to be furnished to the plaintiff and defendant at the expense of the county, it is only a grant of power to the courts to make an order in "any cause," directing that there shall be three typewritten copies of the stenographic notes made, one of which shall be supplied to the plaintiff and one to the defendant. The statute manifestly intended that the third copy, the one furnished to the court, should be used for the purpose of certifying and filing of record. We do not find in this section of the statute anything which would warrant the court in ordering more than three typewritten copies of the stenographic notes in any case, one copy to be furnished to the plaintiff and one copy to be furnished to the defendant. The statute was a grant of power to the courts to order, in any cause, that typewritten copies of the notes be furnished to the plaintiff and defendant. This invested the courts with a discretion to authorize the expenditure of public funds and imposed upon them the duty to exercise a judicial discretion, in each case as it arose, in determining whether the circumstances warranted such expenditure. It cannot be assumed that the discretion thus vested in the courts will be abused. The cases in which the court will be requested to make such an order may not be many, and it is probable that those in which such an order is made will be few, but some cases may arise in which it would be altogether proper for the court to exercise the power conferred by the statute. We cannot say with that certainty which should mark judicial action that the power conferred by this statute may not in some cases enable the courts to guard against mistakes in making up the record of trials, further the cause of justice and expedite judicial proceedings. These considerations must lead us to the conclusion that the provisions of the statute in question are a valid exercise of legislative power.

The plaintiff is entitled to recover his compensation for copies furnished in the second class of cases hereinbefore referred to, those cases in which the court of common pleas made a special order directing the copies to be furnished, the aggregate amount of the compensation in such cases being $87.20. He is entitled to compensation also for one typewritten copy of the stenographic notes of the trial in the court of quarter sessions, in which the court made a special order, in the sum of $38.70. Thus far we concur in the disposition of the case made by the learned judge of the court below. We cannot, however, assent to the proposition that the plaintiff is entitled to recover for copies furnished in the first class of cases hereinbefore referred to, in which the copy was furnished to private litigants without a special order having been made in such cases, respectively. The plaintiff bases his right to recover upon the fact that the court had prior to the time he furnished to private litigants the copies in question adopted a general order or rule which provided that the official stenographer should in all cases, unless otherwise ordered by the trial judge, furnish one typewritten copy of his notes to the plaintiff and one to the defendant. The statute manifestly intended that in each case in which its provisions were invoked the court should exercise a judicial discretion, in view of the facts and circumstances of that particular case, in determining the question whether the county should be subjected to the burden of the expenditure which the court was empowered to order. The court could not by a general rule, merely for its own convenience, divest itself of the discretion which it must exercise in each particular case. Every case has its own peculiar facts, circumstances and necessities; and if one rule suited them all, that rule might as well have been fixed by the legislature itself as by the court. "But there is good reason, at all events the clear and distinct provision of the statute is sufficient reason for us why the court shall exercise the discretion vested in them by the law, and at the time fixed for its exercise:" Road in Norriton and Whitpain Townships, 4 Pa. 337, In re Shaefferstown Road, 5 Pa. 515. This imposes no burden on the court, and that it is a necessary precaution is clearly in-

dicated by this case. The judgment of the court below must to this extent be reversed.

The judgment of the court below is reversed and judgment is now entered in favor of the plaintiff and against the defendant in the sum of $125.90, with interest from January 28, 1909.