## O'Donnell's Appeal

*Ellwood J. Turner* and *William L. Hammond,* for appellant.

*Martin F. Hatch,* Special Deputy Attorney General, for appellee.

MacDade, P. J., August 6, 1945.—The Liquor Control Board refused to renew the restaurant liquor license of Joseph O'Donnell, located at 531 Wycombe Avenue, Yeadon, Delaware County, Pennsylvania. From this refusal an appeal was taken to this court, and the matter was heard de novo after many delays, and an order filed therein on June 8, 1945, dismissing the petition and rule of licensee (appellant) challenging the jurisdiction of the Pennsylvania Liquor Control Board and of this court, from which an appeal has been filed and lodged in the State Superior Court for review.

A request was made for a stay of proceedings and for a supersedeas. While the appeal is now pending the said Superior Court did, on July 19, 1945, after oral argument on appellant's request for a supersedeas, dismiss said request.

On June 16, 1945, this court filed its order on the merits of the case dismissing the appeal and sustaining the action of the board in refusing to renew the license. Exceptions were filed by licensee to said order

of the court and the disposition of said exceptions is now before the court.

It is needless at this point to restate a history of the case, for the same has been fully recited in former opinions, but the same shall be made part hereof by reference thereto and duly incorporated herein by reference, which includes all matters occurring in the instant case, up to and including the hearing de novo before this court on May 22 and 23, 1945.

### Statement of questions involved

Under this heading we only state those which licensee deems important and significant from his viewpoint, namely:

1. Does the Pennsylvania Liquor Control Act of July 18, 1935, P. L. 1246, empower the Liquor Control Board to refuse to renew a restaurant liquor license based upon a protest that the licensed premises are a "general nuisance in the neighborhood"?

2. Does the phrase "conduct of a licensed establishment" as provided in section 409(b) of the act give the board the right to try the question of "nuisance"?

3. If the provision of section 409(b) of the Act as to "conduct of a licensed establishment" gives the board the power to determine that a license will not be renewed because the place is a "nuisance", then that provision of the act is unconstitutional because it would be an unconstitutional delegation of legislative power.

4. Are costs, including stenographer's fees, properly taxable in an appeal under the Liquor Control Act?

### Discussion

We do not believe that these questions, supra, conform to the formal exceptions filed on June 21, 1945. They seem to raise anew the challenge of the jurisdiction of the Liquor Control Board and of this court, which we disposed of finally by the court in an opinion filed on June 8, 1945, and from which an appeal was taken, supra.

The exceptions we are considering cannot again raise matters heretofore passed upon by this court and now for determination by the appellate court. The exceptions filed by licensee to the findings of fact, conclusions of law, and the decree nisi or order, go to the merits of the case and we must be concerned only with such at this time.

The first three of the questions stated above deal with the question of jurisdiction. Our view is, as explained, that such are irrelevant for our consideration upon the merits of the case, the question of jurisdiction having been formerly disposed of and an appeal now pending. However, to clear any doubt, we incorporate herein and make a part hereof our findings, conclusions and order in opinion filed June 8, 1945, dismissing the petition and rule of licensee challenging our and the Liquor Control Board's jurisdiction.

By reference to appellant's brief, we find it is significantly silent on the facts of the instant case, which were the bases for the chancellor's findings and conclusions. Not a word by way of refutation, denial, argument or extenuation of the factual situation. There is no reference to the charges made by numerous witnesses. Rather a deft avoidance of the sordid facts. It may be asked, why this silence on the merits of the case, and why has licensee failed to file any request for findings of fact or conclusions of law, or brief in support of his appeal on the merits of this case? The answer seems quite obvious. The questions raised by this licensee can only be defined and understood with a knowledge of the complaints against the place.

It was for this reason that this court on May 18, 1945, refused the request of licensee to postpone the hearing de novo scheduled for May 22, 1945, and to first pass upon the question of jurisdiction. The chancellor properly expressed the view that the question of jurisdiction can best be answered after the facts had come before the court. This was done and the answer became obvious. We have now reached a point

in the proceedings when the subject of argument should concern these facts but the licensee is still silent on that phase of the case.

The president judge of this court, sitting as chancellor, has on a hearing de novo determined the facts of this case and has summed them up in the opinion filed by him on June 16, 1945, as follows:

"To summarize, the complaints of these witnesses ran the gamut of loud, boisterous noises, foul and indecent language, street fights, unseemly and immoral conduct; children standing at doorway holding the door of taprooms open, looking in attracted by the noise and commotion, men urinating on the side and rear of building, bad odors and stench of urine from the lot, whiskey bottles on the lot, contraceptives on the streets where parked cars had been and on the lot, sober people going in and coming out later in a drunken condition, during the day and night, driving away in trucks and pleasure cars. The vicinity is thickly populated with children who are attracted to this place by the noises, men standing on the corner who had come from the taproom, insulting the women".

In the light of such facts the board very properly refused to renew the license nor can it be doubted that the Liquor Control Board would be derelict in its duty if under such facts it continued to extend to this licensee the high privileges of a liquor license. To support the argument of licensee that the board has no power to hear such testimony and to refuse his license would render the Liquor Control Board a licensing agency which after the issuance of such licenses is impotent to exercise any control over the manner in which such privilege is exercised, by the holders thereof. Such a conclusion is too obviously abhorrent. Nothing in the Liquor Control Act and the numerous cases which have defined the powers of the board reflect such a limitation on the board's power. On the contrary the expressed wording and purpose of the act author-

ize a broad exercise of power in order to achieve the objectives of control of the liquor traffic.

The only remaining question is: "Are costs including stenographer's fees properly taxable in an appeal under the Pennsylvania Liquor Control Act?"

The subject of the appointment and compensation of official court stenographers is controlled by the Act of May 1, 1907, P. L. 135, 17 PS §1801. The writer has made a careful review of the said act and the cases decided concerning the same.

The question of costs is purely statutory and in the absence of any statute which confers the right upon the court to impose the costs of stenographer's fees on the parties to the litigation, such costs are to be paid as part of the general expenses of holding the courts of the county.

It is nevertheless obvious that the question of whether the costs for furnishing a copy of the notes of testimony to counsel for the parties, may be at the expense of the county, is subject to the direction of the court as provided in section 8 of said act.

In Clift v. Philadelphia, 41 Pa. Superior Ct. 638, 645 (1910), the court said:

"The statute does not itself require copies of the notes to be furnished to the plaintiff and defendant at the expense of the county, it is only a grant of power to the courts to make an order in 'any cause,' directing that there shall be three typewritten copies of the stenographic notes made, one of which shall be supplied to the plaintiff and one to the defendant. . . . The statute was a grant of power to the courts to order, in any cause, that typewritten copies of the notes be furnished to the plaintiff and defendant."

This opinion is supported by Morganroth's Election Contest Case, 346 Pa. 327 (1943).

In the latter case the court determined that in an election contest case where the provisions of the Penn-

sylvania Election Code, Act of June 3, 1937, P. L. 1333, 25 PS §3469, 3470, control the question of the liability of costs (section 1769), that such costs were properly chargeable to the county because the court below did not find that the complaint is without probable cause. Had the court found to the contrary the costs for stenographer's fees could be taxed against the parties. That case deals with a subject specifically covered by the said statute and cannot control here.

· The Pennsylvania Liquor Control Act makes no provision covering the subject of stenographer's fees or costs and we are therefore relegated to the general provisions of the act of assembly referred to.

In the absence of any order or direction of this court at any time during the hearings or thereafter that counsel be supplied with copies of the notes of testimony at the expense of the county, the party requesting the same is properly chargeable with the cost thereof. Accord: Briggs v. Erie County, 98 Pa. 570 (1881).